```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH A. FERRARA, et al.,
                         Plaintiff(s),                    REPORT AND
                                                          RECOMMENDATION
         -against-                                        CV 10-6019 (ADS) (WDW)

ISLAND LOGISTICS, INC. and EAST COAST
TRANSPORTATION SERVICES, INC.,
                         Defendant(s).
----------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

Before the court on referral from District Judge Spatt is the determination of default damages. Judge Spatt entered a default judgment on June 29, 2011. DE[14]. For the reasons set forth *infra*, I recommend that the plaintiffs be awarded $723,832.22 in delinquent contributions; $277,033.27 in interest, plus per diem interest as noted *infra*; $282,762.69 in liquidated damages, plus per diem liquidated damages as noted *infra*; $7,447.50 in audit fees; and $8,555.75 in attorney's fees and costs, for a total of $1,299,631.43[1]. I further recommend that the defendants be ordered to submit their books and records for the period commencing November 1, 2008 for audit.

## BACKGROUND

This action was commenced on December 29, 2010, pursuant to ERISA, to compel the defendants, Island Logistics, Inc. and East Coast Transportation Services, Inc., to comply with their contractual obligations regarding reporting and contributions to the plaintiff Funds. The defendants failed to appear and default judgment was entered against them. The defendants have

---

[1]Some of these numbers differ slightly from the amounts sought by the plaintiffs. For example, they cite the amount of liquidated damages due as $282,762.69, and I calculate it as $282,762.69. They also cite the total amount sought as $1,300,631.43, not including per diem awards, but I calculate it as $1,299,631.43. Repeated calculations have resulted in the numbers recommended.

filed no opposition to the motion for default judgment, or to the amount of damages sought, despite service of the relevant motion papers and orders on them.  As damages, the plaintiffs seek a total of $1,300,631.43 jointly and severally against the two defendants, which they describe as alter-ego and single-employer entities.  The amount sought includes: $723,832.22 in estimated delinquent contributions; $277,033.27 in interest on the unpaid contributions plus per diem interest as set forth *infra*; $282,789.69 in liquidated damages plus per diem liquidated damagesas set forth *infra*; $7,447.50 in audit fees; and $8,555.75 in attorney's fees and costs.  The plaintiff funds also seek an order requiring the defendants to submit their books and records for audit for the period commencing November 1, 2008.

## DISCUSSION

**Default Damages Standards**

A default constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.  *See Delucia v. RTD Strategies, Inc.* 2009 WL 346972, *2 (E.D.N.Y. Feb. 4, 2009)(citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)).  A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  But, even after default "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.,* 2007 WL 3124612, *3 (E.D.N.Y. Oct. 23, 2007).  And, the movant must prove that the "compensation

sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Detailed affidavits and other documentary evidence can provide this basis. *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991). Here, the plaintiffs have submitted declarations from Angelos Poulos, payroll auditor at the plaintiffs' accounting firm, Theresa Cody, senior member of the Collections Department of Local 282, and Michael S. Adler, plaintiffs' attorney, and no inquest is necessary.

**Alter-Ego, Single Employer Status and Joint and Several Liability**

The plaintiffs assert that the funds are multiemployer employee benefit plans under ERISA. Island Logistics is a party to the Building Materials Contractor's Industry Agreements with Local 282 for the periods from July 1, 2005 through June 30, 2008 ("the 2005 CBA") and from July 1, 2008 through June 30, 2011 ("the 2008 CBA"; together, "the CBAs). Cody Decl., Exs. A & B. The CBAs incorporate the Funds' governing document, the Restated Agreement and Declaration of Trust ("the Trust Agreement"). Under the CBAs, Island Logistics is obligated to submit remittance reports and contributions on behalf of those employees covered by the CBAs. It is also obligated to submit to periodic audits, also referred to as "agreed-upon procedures engagements," and to pay any delinquencies revealed by the audits. *See* Cody Decl., ¶17, Poulos Decl., ¶6. The Complaint alleges that the defendants failed to meet these obligations.

Although only Island Logistics is a party to the CBAs, the plaintiffs assert that the defendant companies share an alter-ego and single employer relationship, rendering them jointly

3

and severally liable. The Second Circuit has held that two entities constitute a single employer if some or all of the following factors exist: "interrelation of operations, common management, centralized control of labor relations and common ownership." Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises" *Lihli Fashions Corp., Inc. v. N.L.R.B.,* 80 F.3d 743, 747 (2d Cir. 1996)(internal citations omitted). "The alter ego doctrine is similar to the single employer doctrine, but has the added factor of intentional evasion of collective bargaining obligations through the maintenance of two essentially identical entities, one union and one non-union." *King v. Audax Constr. Corp.,* 2007 WL 2582103, *3, n.9 (E.D.N.Y. Sept. 5, 2007)(citing *Lihli*, 80 F.3d at 748); *see also Local Union No. 38, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) (alter-ego determination "signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party" to the CBA). And, a CBA "may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit." *Finkel v. Frattarelli Bros., Inc.,* 2008 WL 2483291, *10 (E.D.N.Y. June 17, 2008)(citing *Brown v. Sandimo Materials,* 250 F.3d 120, 129 n.2 (2d Cir. 2001)).

Here, the plaintiffs allege in the Complaint that (1) like Island Logistics, East Coast employed workers engaged in the trucking business; (2) the companies share common management, including, but not limited to. Ronald G. Bretz serving as president of both; (3) the overall business and financial operations of the two companies are interrelated; (4) they share common facilities; (5) they share a common business purpose; (6) they share centralized control of labor relations; and (7) they share a common pool of employees. *See* DE[13] at 3-4 and

citations to record therein. These well-pleaded allegations about the relationship between the two defendant companies are deemed admitted as a result of the default, and the plaintiffs have, pursuant to applicable caselaw, established that Island Logistics and East Coast Transportation Services are alter-ego and single employer entities, jointly and severally liable for all obligations under the CBAs and Trust Agreement.

**ERISA Damages**

29 U.S.C. §1132(g)(2) provides that when a judgment in favor of a plan is entered pursuant to section 1145, the court shall award the plan: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not to exceed 20 percent of the amount of unpaid contributions; (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate.

Delinquent Contributions:

The plaintiffs base the amount of delinquent contributions sought on Angelo Poulos's audit of Island Logistics' books and records for the period from October 7, 2007 through October 31, 2008, although the contributions sought also cover the period from November 1, 2008 through February 28, 2011. The contributions from the later time period are an estimate. The East Coast delinquent contributions for the period November 1, 2005 through October 31, 2008 are based on an audit by Mr. Poulos, with estimated contributions for the period November 1, 2008 through February 28, 2011. The plaintiffs sought to audit both companies for the period commencing November 1, 2008, but the companies failed to submit to audit for that period. *See* Cody Decl. ¶¶28-30. In their papers in support of the motion, the plaintiffs set forth the separate

calculations for unpaid contributions, interest and liquidated damages for each company, separating the calculations based on the actual audits and the estimations. The combined amounts are set forth in my overall recommendation, *supra*, but are broken down by company *infra*. I note that East Coast is responsible for the lion's share of the amounts owing, but, as noted, the two companies are jointly liable for the combined amounts.

The plaintiffs argue that courts may assess damages by relying on the results of audits or an auditor's opinion. *See* DE[13] at 6 and cases cited therein. Further, if the employer fails to submit to audit, the Trustees may estimate the amount of contributions owed based on one of two formulas in the Trust Agreement, and here the procedures used to estimate amounts are set out in the plaintiffs papers. *See* Cody Decl. ¶¶31-51; Poulos Decl. ¶¶14-47. I agree that the auditor's and Trustees' conclusions were reasonably arrived at and can be relied on in the award of damages. *See generally*, Poulos Decl. and Cody Decl. Thus, I recommend an award of $723,832.22 in delinquent contributions, the amount arrived at by the actual audits and the estimations. That figure was arrived at by adding the following figures:

| | |
|---|---:|
| East Coast Audit 11/1/05-10/31/08 | $299,506.67 |
| Island Logistic Audit 10/7/07-10/31/08 | 608.64 |
| East Coast Estimate 11/1/08-2/28/11 | 418,126.67 |
| Island Logistics Estimate 11/1/08-2/28/11 | 5,590.24 |
| TOTAL of Unpaid Contributions | 723,832.22 |

*See* DE[9] Pl. Stmt. of Amounts Due.

Interest:

Pursuant to the Trust Agreement, interest begins to accrue at the rate of 1½ percent per month (18% per year) from the first day of the month in which the contributions are due. *See* Cody Decl., Ex. A, 30-31 and ninth unnumbered page after 51; Poulos Decl., ¶44. Mr. Poulos

and Ms. Cody calculated the interest due with the following results:

| | |
|---|---:|
| Interest on East Coast Audit through 3/29/11 | $198,585.37 |
| Interest on Island Logistic Audit through 3/29/11 | 433.94 |
| Interest on East Coast Estimate through 3/8/11 | 77,449.41 |
| Interest on Island Logistics Estimate through 3/8/11 | 564.55 |
| TOTAL of Interest | 277,033.27 |

*See* Poulos Decl., ¶¶45-47, Exs. C & D; Cody Decl. ¶¶55-65; Pl. Stmt. of Amounts Due.

The plaintiffs also seek per diem interest as follows:

| | |
|---|---:|
| Per Diem Interest on East Coast Audit from 3/30/11 | $147.71 |
| Per Diem Interest on Island Logistic Audit from 3/30/11 | .25 |
| Per Diem Interest on East Coast Estimate from 3/9/11 | 206.36 |
| Per Diem Interest on Island Logistics Estimate from 3/9/11 | 2.69 |

I recommend an award of those amounts, to be calculated if this Report is adopted.

<u>Liquidated Damages</u>:

Pursuant to 502(g)(2)(c) of ERISA, 29 U.S.C.§1132(g)(2)(c), and the Trust Agreement, liquidated damages are to be awarded in an amount equal to the greater of interest on the unpaid contributions or twenty percent of unpaid contributions. The Plaintiffs' Statement of Amounts Due states that they have opted to receive liquidated damages equal to the amount of interest for the actual audits, that is, $198,585.37 for East Coast and $433.94 for Island Logistics, and twenty percent of the unpaid contributions for the estimated audits, that is, $$83,625.33 for East Coast and $1,118.05 for Island Logistics. *See* Pl. Stmt. of Amounts Due; Cody Decl., ¶¶ 63-65. I note that Ms. Cody states that "[s]hould the amount of interest due as of the date of judgment be greater than twenty percent of liquidated damages, the Funds would be entitled to liquidated damages in the amount of the interest then due. The same holds true with respect to liquidated damages due pursuant to the East Coast Estimated Audit." Cody Decl., p. 15 n.7. If this Report is adopted, the plaintiffs can pursue that change in the amounts awarded.

7

The plaintiffs also seek per diem liquidated damages in the amount of $0.25 for Island Logistics on the actual audit amount due, and $147.71 for East Coast on the actual audit amount due, each accruing from 3/30/11 forward. I recommend the award of those per diem liquidated damages, to be calculated if this Report is adopted.

Audit Fees:

The Trust Agreement allows for reimbursement of audit fees where, as here, the collection of delinquent contributions has been referred by the Trustees to counsel. Cody Decl., Ex. A, 30-31. The audit fees claimed by the Trustees are as follows:

| | |
|---|---:|
| East Coast Audit | $6,187.50 |
| Island Logistic Audit | 560.00 |
| East Coast Estimated Audit | 350.00 |
| Island Logistics Estimate 11/1/08-2/28/11 | 350.00 |
| TOTAL of Audit Costs | 7447.50 |

*See* Pl. Stmt. of Amounts Due; Cody Decl. ¶¶66-69.

Attorney's Fees and Costs:

ERISA requires an award of attorney's fees and costs upon a determination that an employee benefit plan is entitled to judgment for unpaid contributions. 29 U.S.C. §1132 (g)(2)(D). When assessing the reasonableness of legal fees, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. *Id.* Reasonable hourly rates in attorney fee awards are determined with reference to a number of factors, including but

not limited to those factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).[2] *See Arbor Hill*, 522 F.3d at 186-87, 190. Those factors are to be considered within the context of the relevant legal "community," traditionally defined as "the district where the district court sits." *Arbor Hill,* 522 F.3d at 190 (internal citation omitted).

Here, the plaintiffs seek $7,957.00 in attorney's fees, based on charges of $370 per hour for partner time, $275 per hour for associate time, and $90 per hour for paralegal time. I find that the rates are reasonable for ERISA work in the Eastern District and that the number of hours expended is also reasonable. Thus, I recommend an award of the amount sought.

They also seek costs in the amount of $598.75, consisting of a court filing fee of $350, $62 for service of process and $124.75 for postage, telephone calls, photocopies, meals and ground transportation. *See* Adler Decl. ¶¶18-28. I recommend that award as well.

Audit:

The plaintiffs also request that the defendants be ordered to submit their books and records for the period commencing November 1, 2008 for audit, presumably to compare the estimated amounts to the actual amounts owing. I recommend that such audit be ordered.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by

---

[2]The *Johnson* factors, as articulated by the court in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 522 F.3d at 186, n.3 (citing *Johnson,* 488 F.2d at 717-19).

electronic filing on the date below. Plaintiff's counsel is directed to serve a copy of this Report on the defendants by certified mail, return receipt requested, and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December 19, 2008

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge